```
              IN THE UNITED STATES DISTRICT COURT FOR
                 THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```

| | |
|---|---|
| BRIAN YORK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| PROTECTIVE INSURANCE CO., | ) |
| | ) |
|     Plaintiff-Intervenor | ) |
| | ) |
| v. | )   Case No: 2:11-cv-3033-JPM-cgc |
| | ) |
| HILTON WORLDWIDE, INC., | ) |
| d/b/a HAMPTON INNS, LLC | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Hilton Worldwide, Inc., doing business as Hampton Inns, LLC's ("Defendant" or "Hilton") Motion for Summary Judgment, filed March 12, 2013. (ECF No. 26.) Plaintiff Brian York ("Plaintiff" or "York") responded in opposition on April 9, 2013. (ECF No. 29.) Defendant replied in support on April 23, 2013. (ECF No. 31.)

Plaintiff-Intervenor Protective Insurance Company ("Protective Insurance") filed a Motion to Intervene on behalf of Plaintiff on February 22, 2013. (ECF No. 25.) The Court granted Protective Insurance's Motion on March 14, 2013. (ECF No. 27.) Protective Insurance filed its Intervenor Complaint on March 18, 2013. (ECF No. 28.) Hilton filed its Answer to

Protective Insurance's Intervenor Complaint on April 12, 2013. (ECF No. 30.) For the reasons stated below, Hilton's Motion for Summary Judgment is GRANTED.

**I.   BACKGROUND**

This action arises from York's injuries allegedly sustained in a slip and fall on the Hilton premises in Memphis, Tennessee, in November of 2010. York filed the instant action in this Court on November 21, 2011, seeking damages for his medical expenses and compensatory damages in the amount of $200,000 for his personal injuries resulting from Hilton's alleged common-law negligence. (ECF No. 1.) Hilton filed its Answer on December 29, 2011. (ECF No. 5.)

The following facts relevant to the Court's Order are undisputed. On November 24, 2010, at approximately 3:00 p.m., York, an employee of Poe's Delivery Service, made a delivery to the Hampton Inn located at 962 Shady Grove, Memphis, Tennessee ("the hotel"). (Pl.'s Resp. to Def.'s Material Facts, ECF No. 29-1, ¶ 1.) York regularly made deliveries to this hotel, approximately three times per week. (Id. ¶ 2.) On November 24, 2010, after entering the hotel and obtaining the hotel front-desk employee's signature for the delivery, York walked through the hotel to the housekeeping area. (Id. ¶ 3.) York then "pushed open one of the closed double doors to enter the laundry room area" and "walked towards the center of the room to" place

the boxes he was carrying on the table. (Id. ¶¶ 4-5.) The hotel manager, Bryan Hall ("Hall"), testified that the distance from the door to the center of the laundry room was "maybe eight or ten feet." (Id. ¶ 6 (quoting Hall Dep., ECF No. 29-3, at PageID 207:24).) As York crossed the room, he did not see any obstructions in his path. (Id. ¶ 7.) After York placed the boxes on the table, "he stepped back in the direction from which he had just come" and stepped on a piece of metal with his right foot, causing him to slip and fall backward on his left leg. (Id. ¶ 8.) It is alleged that this slip caused York to tear his ACL, which later required surgery. (Id.) At the time of York's fall, no other people were in the area of the laundry room. (Id. ¶ 10.) After his fall, York did not notify the hotel staff or management of the accident. (Id. ¶ 11.)

On January 27, 2011, York returned to the laundry room at the hotel and took photographs depicting a metal ring being used as a door stop for the laundry-room door. (Id. ¶ 14.) York alleges that this ring is the same ring on which he slipped and fell in November 2010. (Id. ¶ 15.)

York alleges that Hilton "was negligent in its failure to keep the walkway free of tripping hazards at the door of the housekeeping entrance where Plaintiff travelled making his delivery." (ECF No. 1 ¶ 16.) York further alleges that Hilton was negligent in its failure to warn of the tripping hazard; in

its "failure to conduct a reasonable inspection of the common walkways" near and around the housekeeping area; and in its "failure to maintain a safe environment" near and around the housekeeping area. (Id. ¶¶ 17-19.) York finally alleges that Hilton "had or should have had actual and/or constructive notice of the dangerous and defective condition that caused Plaintiff's injuries," and that Hilton's negligence was the proximate cause of his injuries. (Id. ¶¶ 20-22.)

## II. STANDARD OF REVIEW

### A. Summary-Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012). "A dispute over material facts is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving

4

parties are entitled to judgment as a matter of law and summary judgment is proper." Chapman, 670 F.3d at 680 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp., 477 U.S. at 323). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Id. at 448-49 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

To make a showing that a fact is, or is not, genuinely disputed, "both parties are required to either 'cite[] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'").

"In considering a motion for summary judgment, [a court] must draw all reasonable inferences in favor of the nonmoving party." Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d

5

725, 730 (6th Cir. 2012) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. (quoting Anderson, 477 U.S. at 251-52). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 252).

"A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle, 687 F.3d at 776 (citing Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir.1984)). "A dispute over material facts is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Bruederle, 687 F.3d 771, at 776 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

### B. Choice of Law

The parties do not dispute that the alleged injury took place in Tennessee and that Tennessee law governs the dispute.

**III. ANALYSIS**

In Tennessee,

> [t]o prevail on a negligence claim, a plaintiff must establish (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause.

Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 355 (Tenn. 2008); see also Morris v. Wal-Mart Stores, Inc., 330 F.3d 854, 858 (6th Cir. 2003). In a premises liability case such as the instant case, the owner of the premises "has a duty to exercise reasonable care with regard to . . . business invitees on the premises." Rice v. Sabir, 979 S.W.2d 305, 308 (Tenn. 1998) (footnote omitted). This duty "includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence." Id.

> In order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: 1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident.

Blair v. W. Town Mall, 130 S.W.3d 761, 764 (Tenn. 2004); see also Morris, 330 F.3d at 858. Tennessee courts have held that

7

"constructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." Blair, 130 S.W.3d at 764 (citing Simmons v. Sears, Roebuck & Co., 713 S.W.2d 640, 641 (Tenn. 1986)).

In the instant Motion, Hilton argues that York cannot meet his burden to show that Hilton had a "duty to warn or correct any alleged danger" on its premises. (ECF No. 26-2 at 2-3.) Hilton contends that York "has not put forth any evidence that Defendant had actual knowledge of a metal ring or that Defendant caused the alleged metal ring to be on the floor of the laundry room" at the time of York's alleged slip and fall. (Id. at 3.) Hilton further contends that York has also "not alleged or brought forth proof that Defendant had constructive knowledge of the metal ring on or before the date of the alleged injury." (Id.)

Hilton argues that it has met its burden to show that there is no genuine issue of material fact that it did not have notice of the allegedly dangerous condition of the premises on the date of York's injury. The General Manager of the hotel, Hall, testified that he frequented the laundry room and that he never saw metal rings as identified by York in that area. (Hall Dep., ECF No. 26-3, at PageID 96:4-5.) Hall also testified that he

8

had never seen a metal ring used as a doorstop as depicted in York's photographs taken two months and three days after the alleged slip and fall. (Id. at PageID 94:8-13.) Additionally, Hall testified that he asked the staff on duty at the time of York's alleged slip and fall if there was "a ring that we're propping doors open with and everyone said no." (Hall Dep., ECF No. 29-3, at PageID 212:20-22.)

Hilton also relies on the testimony of the hotel's Executive Housekeeper at the time of the incident, Evelyn Williams ("Williams"). Williams testified that she was in the area numerous times each day and that she had never seen the metal ring York identified as the ring on which he slipped, nor did she know its origin or how it came to be in the laundry room. (Williams Dep., ECF No. 26-4, at PageID 102:17-23.)

Hilton also argues that despite York's January 27, 2011, photographic evidence that the metal ring he alleges he slipped on was being used as a doorstop in the laundry room, this evidence does not relate to, nor does it purport to show, "the condition of the property on November 24, 2010." (ECF No. 26-2 at 5.)

York argues that Hilton's evidence is insufficient to award summary judgment in light of the fact that the area in which York fell was an area not open to the general public. (ECF No. 29 at 2.) York argues that Stringer v. Cooper, 486 S.W.2d 751

9

(Tenn. Ct. App. 1972), controls. In Stringer, the Tennessee Court of Appeals stated,

> When it is shown that the general area in which an invitee is lawfully present is not open to the general public and is ordinarily accessible only by the proprietor or his employees and is used solely for the internal affairs of the business establishment and not for retail purposes, we hold an inference arises that the condition of that area is caused by and is known to the proprietor, and plaintiff need not show either how the alleged defective condition came to be there or how long it had remained there. Of course, the defendants could adduce countervailing proof to show lack of responsibility or knowledge, but this Court may not indulge in speculation as to possible defenses.

Stringer, 486 S.W.2d at 757. York argues that applying this inference defeats Hilton's Motion. (ECF No. 29 at 4.) York asserts that with this presumption, "he is not required to prove how long the metal ring was there or how it got there." (Id.) York also contends that any proof that Hilton provides "only creates a question of fact" that should then be submitted to the jury. (Id.)

York presents evidence that there is conflicting testimony regarding whether the laundry room is public or private. (Id. at 5.) York cites Hall's testimony that the laundry area is "public property" and that anyone "could walk up and look at it, photograph it, sketch it if they wanted to." (Id. (citing Hall Dep., ECF No. 29-3, at 83:24-84:2).)[1] Contrary to Hall's

---

[1] While York quotes Hall's testimony, York has not included the corresponding pages of the Hall Deposition it cites, nor can the Court locate this

10

testimony, Williams testified that the laundry room had to be closed and locked when employees were not present, which York contends shows that the area was private. (Id. (citing Williams Dep., ECF No. 29-4, at PageID 230:5-20.)) York contends that the conflicting testimony on whether the laundry room was public or private creates a genuine issue of material fact that "can only be resolved by a jury." (Id.)

York also contends that he has presented a "feasible explanation" for his slip and fall, with supporting photographic evidence of the alleged instrumentality that caused his fall, while "Hilton has failed to offer any countervailing evidence or explanations, except its own blanket denials." (Id.)

In its Reply, Hilton contends that the Stringer presumption is rebutted because "[t]he proof in the record affirmatively negates that Defendant had knowledge of a metal ring or that Defendant caused a metal ring to be in Plaintiff's pathway on the date of Plaintiff's alleged fall." (ECF No. 31 at 2.) Hilton reiterates that the January 27, 2011, photographic evidence of the metal ring used as a doorstop is not representative of the conditions of the laundry room on November 24, 2010, the day of York's accident, therefore it "does not create a disputed material fact about the condition of the

---

purported testimony within the pages York has provided. Accordingly, the Court will not consider this testimony as part of its analysis.

property on November 24, 2010." (Id. at 2-3.)  Hilton also argues that York "fails to provide any rebuttal to Defendant's argument that in light of the undisputed facts of this case, Defendant did not owe Plaintiff a duty." (Id. at 4.)

Taking all inferences in favor of the non-movant York, the Court will apply the Stringer presumption that the laundry room was an area not open to the public. As a result, the Court will infer that the condition that caused York to slip was created by Hilton. Continuing the Stringer analysis, however, the Court finds that Hilton has provided "countervailing proof" to rebut this presumption and show that it did not have "responsibility or knowledge" of the dangerous condition. See Stringer, 486 S.W.2d at 755 ("[T]he defendants could adduce countervailing proof to show lack of responsibility or knowledge . . . .").

The Court also notes that similarities to the circumstances in Stringer, despite York's arguments, are limited to the application of the presumption arising when an area is closed to non-employees. In Stringer, the Tennessee Court of Appeals found the trial court erred in directing a verdict for the defendants and remanded the case because at trial the defendants put on no proof to rebut any presumption about the employee area and the dangerous conditions therein. Id. at 755, 758 ("Counsel for defendant stated that he could add nothing to the case as no one witnessed the fall of the plaintiff, rested his case, and

renewed his motion for a directed verdict."). In the instant case, the Court finds Hilton has provided proof to rebut the Stringer presumption.

Hilton rebuts this presumption with the testimony of Hall, Williams, and York himself. First, Hall testified that he had never seen the ring that York claims caused his fall. (Hall Dep., ECF No. 26-3, at PageID 96:4-5.) Hall also testified that he asked the staff on duty at the time of the alleged injury "specifically about a metal ring object," and all responded that they were not "propping any doors open with metal rings." (Id. at PageID 207: 12-16; see also id. at PageID 212:14-22).) Recognizing that Hall also testified that the ring may have been related to the wrenches that were in the laundry room "sitting on top of the laundry containers," the Court notes that Hall testified that those wrenches were plastic (id. at PageID 96:6-13), while the instrumentality on which York claims to have slipped was metal (see York Dep., ECF No. 29-2, at PageID 191:8-9, 194:23-195:1, 196:10-12, 202:10-14). Taking this evidence in the light most favorable to York, it does not create a genuine issue of material fact that the metal ring came from a plastic wrench.

Second, Williams testified that she had never seen the ring and did not know its origin or how it came to be in the laundry room. (Williams Dep., ECF No. 26-4, at PageID 102:17-23.) York

13

does not offer any evidence to rebut Williams's testimony to create a genuine issue of material fact. Together, the testimony of Hall and Williams indicate that Hilton and its employees were not aware of the condition of the floor. Additionally, York testified that there were no other people around the laundry room or in the area where he fell at the time of his alleged slip and fall. (York Dep., ECF No. 29-2, at PageID 195:15-20.)

In sum, this evidence indicates that Hilton had no actual or constructive notice of the allegedly dangerous condition of the floor. Accordingly, the Court finds Hilton has met its burden to show there is no genuine issue of material fact that it did not have notice of the condition of the floor.

Turning to the non-movant York, the Court finds he has not met his burden under Rule 56(e) to present evidence to "properly address" Hilton's facts and thereby create a genuine issue of material fact. Reviewing the record, York has not presented any evidence showing that Hilton or its agents and employees created the hazardous condition in the laundry room or had actual notice of the condition of the floor. Further, York has not presented any evidence of the length of time the metal ring on which York alleges he slipped was present on the laundry room floor giving rise to Hilton's constructive notice of the floor's hazardous condition. While York presents photographic evidence of the

instrumentality that allegedly caused his fall, this evidence is not representative of the condition of the instrumentality itself or the laundry room at the time of the injury as it was taken two months and three days after the time of the alleged injury.  The Court, therefore, finds it is immaterial to the instant Motion.  As a result, York has not met his burden to "set forth specific facts showing a triable issue of material fact."  Mosholder, 679 F.3d at 448.

The Court having found there is no genuine issue of material fact that Hilton created the hazardous condition or had actual or constructive notice of the hazardous condition of floor on the day of York's alleged slip and fall, the Court further finds that Plaintiff has not made a "sufficient showing of an essential element of his case on which he bears the burden of proof," Chapman, 670 F.3d at 680 (citing Celotex Corp., 477 U.S. at 323), namely that Hilton owed York a duty.  Accordingly, York cannot establish the first element of his negligence claim and summary judgment in favor of Hilton is appropriate.

**IV. CONCLUSION**

For the foregoing reasons, Hilton's Motion for Summary Judgment is GRANTED. York's claims against Hilton are hereby DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED**, this 14th day of June, 2013.

/s/ Jon P. McCalla<br>CHIEF U.S. DISTRICT JUDGE